IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER JAMES,

    Petitioner,                   No. 2:04-cv-1574 FCD KJN P

   vs.

J. SOLIS, Warden,

    Respondent.           FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction in 2001 on charges of attempted second degree robbery and assault with a firearm, and the jury found petitioner used a firearm in connection with both offenses. (Clerk's Transcript ("CT") 92-94.) The trial court found petitioner had suffered a prior prison term. (Reporter's Transcript ("RT") 301-02.) Petitioner was sentenced to thirteen years in state prison. (CT 138.) Petitioner raises four[1] claims in his petition. (Dkt. No. 1.)

PROCEDURAL HISTORY

        Petitioner filed a timely appeal which was denied on July 30, 2002. (Resp't's Ex.

---

[1] Petitioner initially raised five claims. His third claim was dismissed as unexhausted by order filed September 21, 2005. (Dkt. No. 12.)

1

C.) Petitioner filed a petition for review in the California Supreme Court which was denied on June 9, 2004. (Resp't's Exs. D & E.)

Petitioner filed habeas petitions in the Solano County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied. (Resp't's Exs. F & G.)

The instant petition was filed on August 4, 2005. Respondent's answer was filed on June 16, 2006. Petitioner filed a traverse on August 30, 2006.

## FACTS[2]

At about 11:30 p.m. on July 16, 2000, Lamar Hernandez was in Vallejo with Demeko Porter. Hernandez wanted to "kick it" with Porter before turning himself in to do some jail time. They drove to 118 Deborah Street in Vallejo. Hernandez waited in his parked truck while Porter entered the house at that location. Hernandez was talking on his cell phone when [petitioner] and Dykes approached his truck.

[Petitioner] pointed a revolver at Hernandez's face, opened the driver's door and told Hernandez to get out of the truck. Dykes held an automatic firearm and stood directly behind [petitioner]. Hernandez asked [petitioner] why he wanted him to get out of the truck. [Petitioner] again demanded that Hernandez get out of the truck. When Hernandez hesitated, [petitioner] hit him on the side of his head with the gun.

Hernandez got out of the truck. [Petitioner] ordered him to get on his knees and told him to "take it off." [Petitioner] thought that Hernandez was wearing a necklace. [Petitioner] had seen Hernandez wearing one on a prior occasion at the home of Porter's ex-wife, Dede.[3] [Petitioner] felt around Hernandez's neck but Hernandez was not wearing any jewelry. Dykes, who was still holding his gun and standing behind [petitioner], told [petitioner] that he saw Hernandez throw something in the back of the truck. [Petitioner] kicked Hernandez on the left side of his face, injuring his lip. He then opened the back door of the truck and found the watch. He threw it on the ground and broke it. [Petitioner] also found a trailer hitch in the back of the truck and started to

---

[2] The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. James, No. A096113 (July 30, 2002), a copy of which was lodged by Respondent as Exhibit C on June 19, 2006.

[3] [Petitioner] is Dede's brother.

2

> vandalize the truck. He threw the hitch at the front windshield and broke it. He used the hitch to damage other windows on the truck. In addition, [petitioner] kicked the cigarette lighter and ashtray inside the truck and threw the keys to the truck over a house. [Petitioner] and Dykes then walked away.

(People v. James, slip op. at 2-3.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

     A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted) A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be used to litigate state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

     This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) of the AEDPA sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous'").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

4

II. Petitioner's Claims

      A. Firearm Enhancement

Petitioner's first claim is that he was denied his right to a jury decision on the firearm enhancement because the jury's verdict form did not reference California Penal Code § 12022.53, but incorrectly referenced California Penal Code § 12022.5.[4]

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the First Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner and his co-defendant] next contend that the trial court was without jurisdiction to sentence them on the section 12022.53, subdivision (b) enhancement because the verdict form signed by the jury referenced only section 12022.5 and not section 12022.53, subdivision (b). The People, citing *People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6, 254 Cal.Rptr. 811, 766 P.2d 577 [objection to jury verdict forms is generally deemed waived if not raised in the trial court] and *People v. Jones* (1997) 58 Cal.App.4th 693, 715, 68 Cal.Rptr.2d 506 [same], assert that any error in the verdict form was waived because [petitioner and his co-defendant] failed to object to the form of the verdict at trial.[5] We need not resolve the question on the basis of waiver because any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.)
>
> The information, which was read to the jury, charged that in committing the attempted robbery upon Hernandez, [petitioner and his co-defendant] personally used a firearm within the meaning of sections 12022.5, subdivision (a)(1) and 12022.53, subdivision (b). The trial court instructed the jury on the firearm issue in the language of CALJIC No. 17.19 as follows: "If you find the defendants . . . guilty of one or more of the crimes charged, you must determine whether the defendants . . . personally used a

---

[4] Both sections 12022.5(a) and 12022.53(b) require the imposition of a consecutive term when a firearm is used in the commission or attempted commission of a felony. The only difference between the sections is the sentence to be imposed. Under section 12022.5(a), the sentencing range is three, four or ten years. Under section 12022.53(b), which only applies if an enumerated felony such as attempted robbery, is committed, requires the imposition of a ten-year term. Cal. Penal Code §§ 12022.53(a)(4) & (a)(18). The jury, however, does not consider sentencing. See CALJIC No. 17.42.

[5] [Petitioner and his co-defendant] raised the issue of the verdict form prior to sentencing.

firearm in the commission of that crime or those crimes. [¶] The word 'firearm' includes a handgun or generally any device designed to be used as a weapon from which is expelled through a barrel the projectile by the force of any explosion or some form of combustion. The 'firearm' need not be operable. The term 'personally used a firearm' as used in this instruction, means the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it." The jury returned an affirmative finding on the issue as to both defendants on the verdict forms that provided: "We, the Jury in the above entitled matter, find the Defendant . . . personally used a firearm, to wit: a handgun, within the meaning of Penal Code section 12022.5(a)(1). . . ." The verdict forms did not specify section 12022.53, subdivision (b). The omission, however, is not fatal to the verdicts.

The issue of whether a jury's finding on a firearm enhancement was sufficient when the verdict form specified only one of the charged statutes was addressed in *People v. Cory* (1984) 157 Cal.App.3d 1094, 1101-1104, 204 Cal.Rptr. 117. There, the defendant was charged with personal use of a firearm under sections 1203.06 and 12022.5. As here, the jury was instructed pursuant to CALJIC No. 17.19, but the verdict form referenced only section 1203.06. (*Cory*, at p. 1102, 204 Cal.Rptr. 117.) The court held that the jury's function was to determine whether the facts necessary to support a firearm use finding were proven and that it was unnecessary to set forth the statutes in the verdict. "[T]he jury's function was to find whether the facts necessary for conviction had been proven, by assessment of the evidence admitted at trial in light of the court's instructions defining the types and quanta of facts necessary for conviction. The verdict, culminating this process, was the jury's statement whether it had or had not found those facts. There was no need in this fact-finding process for enumeration in the verdict of the statutes that defined the facts to be found or prescribed their legal effects. Correspondingly, section 1158a prescribes an appropriate form of verdict concerning firearm use under section 12022.5 which does not include any reference to the statute. Section 1158a, subdivision (b) is thus a legislative confirmation that the type of finding appellant here claims was necessary was unnecessary, and conversely that the reference to another statute, to which appellant objects, was surplusage." (*Id*. at pp. 1102-1103, 204 Cal.Rptr. 117; see also *People v. Jones, supra*, 58 Cal.App.4th at pp. 710-711, 68 Cal.Rptr.2d 506 [form of the verdict immaterial if the jury's intent to convict of a specified offense within the charges is unmistakably clear].)[6]

---

[6] *People v. Romero* (1982) 31 Cal.3d 685, 183 Cal.Rptr. 663, 646 P.2d 824, cited by [petitioner and his co-defendant], is inapposite. *Romero* involved the situation where the jury

1  Here, as in Cory, the jury was instructed in the language of
2  CALJIC No. 17.19, the instruction designed for use in connection
   with determinations under both of the charged enhancements. That
3  the verdict form failed to enumerate section 12022.53, subdivision
   (b) was immaterial. The jury, by making affirmative findings that
4  each defendant personally used a firearm, necessarily found the
   requisite facts to support the enhancements. The findings thus
5  were sufficient to permit the trial court's imposition of the
   enhancements pursuant to section 12022.53, subdivision (b).

6  (People v. James, slip op. at 7-9.)

7  In a federal habeas action, errors in jury instructions are generally not cognizable

8  unless they deprive petitioner of a fundamentally fair trial. See Henderson v. Kibbe, 431 U.S.

9  145, 154 (1977). To warrant federal habeas corpus relief based on instructions that were

10 allegedly erroneous under state law, a petitioner must demonstrate that the error violated a

11 federal constitutional right. See Cupp v. Naughten, 414 U.S. 141, 146 (1973). Thus, the issue

12 here is whether the verdict form error, by itself, so infected the entire trial that the resulting

13 conviction violated due process. This court finds that it did not.

14 Here, the state court confirmed that, as a matter of state law, the statutory

15 reference for the enhancement is not required to be included in the jury instruction. That

16 determination is binding. See Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009) ("[W]e

17 have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court

18 determinations on state-law questions.'") (internal citation omitted). Under California law, "[n]o

19 particular form of verdict is required, so long as it clearly indicates the intention of the jury to

20 find the defendant guilty of the offense with which he is charged. It is sufficient if it finds him

21 guilty by reference to a specific count contained in the information" and "matters of surplusage

22 and clerical errors will be disregarded." People v. Reddick, 176 Cal.App.2d 806, 820-21, 1

23 Cal.Rptr. 767 (1959).

---

25 made a clerical error in its verdict. It intended to convict the defendant of count two but instead
   entered a guilty verdict on count one. (Id. at p. 687, 183 Cal.Rptr. 663, 646 P.2d 824.) The court
   held that the belated affidavits of several jurors were insufficient to support impeachment of the
26 jury's verdict. (Id. at p. 693, 183 Cal.Rptr. 663, 646 P.2d 824.)

In the instant case, the jury was specifically instructed it must determine whether petitioner personally used a firearm in the commission of the crimes charged. (RT 235-36.) The jury is presumed to have followed its instructions, both in rendering its verdict and in filling out the verdict form. See Weeks v. Angelone, 528 U.S. 225, 226 (2000). The jury expressly found petitioner personally used a firearm. (CT 93-94.) This was the sole factual question required for the enhancement at issue here.[7] Thus, petitioner received a jury decision on the issue of the firearm enhancement, and the incorrect statutory reference did not violate petitioner's due process rights. Accordingly, petitioner's first claim for relief should be denied.

### B. Limiting Impeachment

Petitioner's second claim is that the trial court erroneously limited petitioner's ability to impeach Lamar Hernandez. The trial court allowed petitioner to impeach Hernandez with his arrest for possession of cocaine for sale, but found petitioner could not raise the attendant firearm allegation. Petitioner claims this denied him due process.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the First Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner and his co-defendant] contend[s] that the trial court erroneously limited their impeachment of Hernandez. They argue that they should have been permitted to question Hernandez about his arrest for illegal possession of a weapon. We disagree.
>
> The decision to admit impeachment evidence of past misconduct is within the broad discretion of the trial court. (*People v. Wheeler* (1992) 4 Cal.4th 284, 296, 14 Cal.Rptr.2d 418, 841 P.2d 938.) "[T]he admissibility of any past misconduct for impeachment is

---

[7] Petitioner's reliance on People v. Beamon, 8 Cal.3d 625 (1973), is inapposite. The court in Beamon held that a gun-use finding could not serve as an implied finding of the degree of the robbery in which the gun was used. Here, however, the jury found petitioner guilty of attempted second degree robbery and assault with a firearm. The factual finding as to the enhancement at issue here required the jury to find petitioner used a firearm in connection with both offenses. The jury found petitioner used a firearm in connection with both offenses. (CT 92-94.) Thus, there was no implied finding either for the underlying criminal offenses or for the enhancement.

limited at the outset by the relevance requirement of moral turpitude. . . . [¶] . . . In general, a misdemeanor--or any other conduct not amounting to a felony--is a less forceful indicator of immoral character or dishonesty than is a felony. Moreover, impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Id*. at pp. 296-297, 14 Cal.Rptr.2d 418, 841 P.2d 938.)

Here, the trial court properly exercised its discretion under Evidence Code section 352 to limit the cross-examination of Hernandez. The trial court determined that Hernandez could be impeached with his arrest for possession of cocaine, but that further impeachment of him based on the charge that he possessed a firearm during the cocaine offense was unduly prejudicial.

The trial court did not err in excluding the evidence.  First, there were problems of proof with the possession of a firearm arrest.  The record makes clear that Hernandez was charged with the firearm allegation as an enhancement to a possession for sale of cocaine charge. Both the substantive offense of possession for sale and the enhancement were ultimately dismissed.  Second, as the trial court noted, to prove the enhancement might entail "a trial within a trial," thus implicating the considerations of undue time, confusion and prejudice outweighing any probative value of the evidence.  Finally, notwithstanding the exclusion of the proffered impeachment evidence, the jury learned that Hernandez met Porter to "kick it" before he turned himself in "to do some jail time," that he had "felonies and stuff," that he was familiar with firearms because he "had been around," had "lived the lifestyle," and "had been shot."  Thus, evidence that Hernandez was not a model citizen was before the jury.  That defendants were not allowed to cross-examine Hernandez about the alleged firearm possession did not prevent them from arguing Hernandez's lack of credibility to the jury.  Indeed, defense counsel for James argued in closing argument:  "Again, in considering Mr. Hernandez, some of the things he said, he's lived the lifestyle.  He's been shot before. . . . This is not the person, Mr. Hernandez, who is worthy of belief." In sum, any additional impeachment of Hernandez would simply have been cumulative.  The trial court's ruling on the issue did not constitute an abuse of discretion.

(People v. James, slip op. at 6-7.)

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI.  The primary interest secured by the

9

1 confrontation clause is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315
2 (1974)). However, the Confrontation Clause does not prevent trial judges from imposing limits
3 on cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Rather, "the
4 Confrontation Clause guarantees an *opportunity* for effective cross-examination, not
5 cross-examination that is effective in whatever way, and to whatever extent, the defense might
6 wish." Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam ) (emphasis in
7 original)). In fact, "a trial judge retains 'wide latitude' to limit defense counsel's questioning of a
8 witness without violating a defendant's Sixth Amendment rights." Carriger v. Lewis, 971 F.2d
9 329, 333 (9th Cir. 1992). "'A limitation on cross examination does not violate the Confrontation
10 Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury
11 sufficient information to appraise the biases and motivations of the witness.'" Murdoch v.
12 Castro, 489 F.3d 1063, 1069 (9th Cir. 2007) (quoting United States v. Bridgeforth, 441 F.3d 864,
13 868 (9th Cir. 2006)). The Ninth Circuit uses a three-part test to determine whether a trial court
14 violated the Confrontation Clause, considering: "(1) whether the excluded evidence was relevant;
15 (2) whether there were other legitimate interests outweighing the defendant's interest in
16 presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient
17 information to assess the credibility of the witness." United States v. Larson, 460 F.3d 1200,
18 1207 (9th Cir. 2006).

19 First, the omitted testimony was not relevant because Hernandez was not
20 convicted of illegally possessing a firearm. (RT 6-8.) Hernandez was ultimately convicted of
21 possession of cocaine, California Penal Code § 11350. (RT 8.) There was no conviction for the
22 alleged firearm. (Id.) In addition, the record reflects that the excluded evidence that Hernandez
23 had previously been arrested and charged with a firearm enhancement was not relevant to the
24 claims in the underlying criminal action. There was no evidence that Hernandez was "armed
25 with or used a firearm in this case." (RT 12.) Moreover, an arming enhancement is not a moral
26 turpitude crime under California law (RT 12), so its probative value was very slight. (RT 12.)

1       The trial court had legitimate interests in omitting this evidence.  The court did
2  not want "to have a trial within a trial" on those impeachment issues.  (RT 14.)  The trial court
3  did not want to confuse the jury.  The trial court was also concerned that admission of the firearm
4  evidence would prejudice the prosecution's right to a fair trial.  (RT 14.)
5       Finally, the exclusion of this evidence did not prevent the jury from assessing
6  Hernandez' credibility.  On cross-examination, Hernandez admitted that, prior to the attack, he
7  was "kicking it" and getting ready to turn himself in to "do some jail time."  (RT 77, 82.)
8  Hernandez admitted he was arrested in August of 1998 for possession for sale of cocaine.  (RT
9  93.)  Hernandez admitted he possessed 29 rocks of cocaine, 17 grams of cocaine base and 6
10 grams of cocaine powder.  (RT 93.)  Hernandez testified that he had previously been shot, and
11 "had been around."  (RT 124.)  Hernandez mentioned he had "felonies."  (RT 122.)
12      Defense counsel also pointed out that Hernandez submitted a claim to the
13 California victim/witness fund for $10,000.00 for damages stemming from the attack, but that
14 Hernandez' out of pocket costs for the truck repair was $500.00 for the insurance deductible.
15 (RT 121-23.)  This raised an inference that Hernandez had intentionally inflated the amount
16 sought.
17      Under the circumstances, the trial court did not commit federal constitutional error
18 because of the limitation on petitioner's right to cross-examine Hernandez about his prior
19 possession of a firearm.  The state court's rejection of petitioner's second claim for relief was
20 neither contrary to, nor an unreasonable application of, controlling principles of United States
21 Supreme Court precedent.  Therefore, petitioner's second claim for relief should be denied.
22      C.  Prosecutorial Misconduct
23      Petitioner's fourth claim is that the prosecutor committed misconduct by
24 misstating the evidence in closing argument.  Petitioner argues that there was no evidence in the
25 record to demonstrate that petitioner's motive in forcing Hernandez out of the van at gunpoint
26 was to rob Hernandez, so the prosecutor's argument suggesting such a motive was misconduct.

In addition, petitioner contends the prosecutor vouched for Hernandez' credibility.

Petitioner raised this claim for the first time on collateral review. Because there is no reasoned state court opinion on this claim, an independent review of the record is required "to determine whether the state court clearly erred in its application of controlling federal law." Delgado, 223 F.3d at 982.

A criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Sassounian v. Roe, 230 F.3d 1097, 1106 (9th Cir. 2000). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. Johnson, 63 F.3d at 930 (citation omitted).

In considering claims of prosecutorial misconduct involving allegations of improper argument, the court is to examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002). Thus, in order to determine whether a prosecutor engaged in misconduct during closing argument, it is necessary to examine the entire proceedings to place the remarks in context. See United States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . .").

The record reflects that the prosecutor's comments were reasonably based on evidence adduced at trial. Petitioner told Hernandez to get out of his truck and get on his knees. (RT 60.) Petitioner told Hernandez to "take it off" . . . "[l]ike if I had some jewelry on or something." (RT 60.) Petitioner "thought [Hernandez] was lying, so he started feeling around my neck" . . . "[l]ike to see if [Hernandez] had a chain on or something on, which I didn't." (RT

60.) Hernandez confirmed he had previously worn a chain over at Dede's house, and was wearing it when he saw petitioner there on more than one occasion. (RT 61.) Hernandez also testified that he had thrown his watch into the back of the truck and petitioner went into the truck, found the watch and took it out of the truck. (RT 62-63.) Hernandez' testimony was sufficient to support the prosecutor's arguments concerning petitioner's motive. Because the prosecutor's comments were properly based on the evidence, they did not render petitioner's trial unfair.

In addition, petitioner contends the following comments demonstrate the prosecutor was vouching for Hernandez' credibility:

> Hernandez, he's trying to do the right thing, he's not trying to get someone in trouble, he's trying to do the right thing. He would never make this up if it hasn't happened. It's true, strange set of circumstances, he's gone, did a lot of trouble, you know. He's had to come in here and say things to you he doesn't want to say. He wouldn't do that. So Mr. Porter I say is lying. I told you why.

(RT 280.)

"It is improper for the prosecution to vouch for the credibility of a government witness. Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." United States v. Roberts, 618 F. 2d 530, 533 (9th Cir. 1980); see also United States v. Young, 470 U.S. 1, 18 (1985); United States v. Garcia-Guizar, 160 F.3d 511, 520 (9th Cir. 1998). "The first type of vouching involves personal assurances of a witness's veracity." United States v. Roberts, 618 F. 2d at 533. "The second type of vouching involves prosecutorial remarks that bolster a witness's credibility by reference to matters outside the record." Id. "To warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make the resulting conviction a denial of due process." Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004) (citation and internal quotation omitted).

Review of the entirety of the prosecutor's comments, taken in context, demonstrate that the prosecutor was emphasizing that, as between witness Porter and witness

1  Hernandez, there were good reasons, based on the evidence adduced at trial, for the jury to
2  believe Hernandez rather than Porter.  (RT 280-81.)  The prosecutor properly could argue the
3  evidence permitted the inference that Hernandez was credible.  See United States v. Necoechea,
4  986 F.2d 1273, 1279 (9th Cir. 1993) (statement "I submit to you that [witness is] telling the truth,
5  because if she were lying she would have done a better job," was not vouching, but rather
6  permissible argument of inference from evidence).  Here, the prosecutor's arguments were fairly
7  based on the evidence and do not constitute improper vouching.  The prosecutor was not placing
8  the prestige of the government behind his truthfulness, and did not suggest he knew facts outside
9  the record.  Rather, he was arguing that, based on the evidence, the jury could properly accept
10 Hernandez' testimony over Porter's.  There is no constitutional error arising from these
11 comments in closing argument.
12         But even assuming, arguendo, the prosecutor's comments were improper, the jury
13 was instructed that attorneys' statements are not evidence.  (RT 224.)  The court later reminded
14 the jury that attorneys' statements are not evidence, explained that misstatements could occur,
15 and if the jury had questions during deliberation, they could seek read back of witness testimony
16 to assist them.  (RT 240.)  The jury was also specifically instructed on witness credibility.  (RT
17 226-28.)  Those instructions made clear to the jury that the prosecutor's comments were
18 argument, not evidence.  Moreover, there is no evidence that any vouching so infected the trial
19 with unfairness as to make the resulting conviction a denial of due process.  Davis, 384 F.3d at
20 644.
21         Thus, the state court's rejection of petitioner's fourth claim for relief was neither
22 contrary to, nor an unreasonable application of, controlling principles of United States Supreme
23 Court precedent.  Accordingly, petitioner's fourth claim for relief should be denied.
24         D.  Ineffective Assistance of Counsel
25         Petitioner's fifth claim is that he suffered ineffective assistance of counsel because
26 defense counsel failed to object to the prosecutor's remarks about Hernandez' credibility.

14

Petitioner raised this claim for the first time on collateral review.  Because there is no reasoned state court opinion on this claim, an independent review of the record is required "to determine whether the state court clearly erred in its application of controlling federal law." Delgado, 223 F.3d at 982.

In order to prevail on his claim of ineffective assistance of counsel, petitioner must show two things, an unreasonable error and prejudice flowing from that error.  First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 688 (1984).  The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690.  "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

Second, petitioner must prove prejudice. Strickland at 693.  To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Here, petitioner's trial counsel was not ineffective in failing to object to the prosecutor's comments. See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  As noted above, petitioner failed to demonstrate that his due process rights were violated by the prosecutor's statements.  Petitioner has also failed to show that the trial court would have sustained an objection on these grounds.  An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. Jones

1 v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citation omitted).  See also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").  Thus, the state court's rejection of petitioner's fifth claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner's fifth claim for relief should also be denied.

III.  Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 23, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jame1574.157